UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIBBY HILSENRATH,<br>    on behalf of her minor child, C.H.,<br><br>                      **Plaintiff**,<br><br>v.<br><br>SCHOOL DISTRICT OF THE CHATHAMS;<br>BOARD OF EDUCATION OF SCHOOL DISTRICT OF THE CHATHAMS;<br>MICHAEL LASUSA,<br>    in his official capacity as the Superintendent of the School District of the Chathams;<br>KAREN CHASE,<br>    in her official capacity as the Assistant Superintendent of Curriculum and Instruction at the School District of the Chathams;<br>JILL GIHORSKI,<br>    in her official capacity as the Principal of Chatham Middle School;<br>STEVEN MAHER,<br>    in his official capacity as the Supervisor of Social Studies for the School District of the Chathams;<br>MEGAN KEOWN,<br>    in her official capacity as a Social Studies teacher for Chatham Middle School;<br>CHRISTINE JAKOWSKI,<br>    in her official capacity as a Social Studies teacher for Chatham Middle School;<br><br>                      **Defendants.** | Civ. No. 18-966 (KM)<br><br>OPINION |

1

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court is the defendants' motion to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the motion will be denied.

**Introduction**

The plaintiff, Libby Hilsenrath (on behalf of her child, C.H., a middle school student), sues the Chatham School District and Board of Education, as well as individual school administrators and teachers in their official capacities only. She asserts a claim under 42 U.S.C. § 1983 that the school's curriculum violates the Establishment Clause of the First Amendment by promoting the Islamic faith.

Plaintiff's position, if I may paraphrase it, is that the public schools may not Constitutionally proselytize on behalf of a religion, but that the Chatham schools have crossed that line here. In particular, the plaintiff alleges, C.H. has been exposed to two videos and a worksheet that contain materials that members of the Islamic faith use to express religious beliefs or proselytize others.[1] The Complaint begins with a quotation from those materials: "May God help us all find the true faith, Islam. Ameen." This is captioned as the Chatham school authorities' "call for the conversion of 7th grade students." Such materials, the Complaint alleges, have a primary purpose of promoting and advancing the Islamic religion. The Complaint also alleges that the curriculum gives insufficient attention to the Christian and Jewish religions. The Complaint primarily seeks declaratory and injunctive relief, but adds a prayer for nominal damages, as well as costs and fees.

The defendants' position, likewise paraphrased, is that world religions have a profound influence on human affairs and are therefore an appropriate

---

[1] She also alleges more indirect contact online with other materials. For now, it is not necessary to look beyond the allegations regarding the two videos and the worksheet.

2

subject of secular study. The Chatham curriculum, in their view, does not exceed proper bounds. The defendants have moved to dismiss the complaint, stating that they have not promoted, endorsed, or proselytized on behalf of any religion. Rather, say the defendants, the students study world religions as part of their academic education in a class called World Cultures and Geography. That yearlong class, they say, covers many areas of the world, and embraces such subjects such as geography, trade, art, social, economic and political structures, and everyday life, as well as religions and religious texts. Many religions, they say, are covered, but to study them is not to endorse or promote them. One unit of the class covers the Middle East and North Africa, and materials concerning the Islamic faith, say defendants, are a necessary part of that unit. They allege that the class has no parochial focus or agenda; the materials regarding Islam, according to defendants, must be understood as but one component of a comprehensive social studies curriculum.

I need not endorse either party's position to recognize that there is a dispute here which requires the development of a factual context. This complaint, as complaints do, makes allegations which are yet untested by any fact finder. The motion to dismiss, as such motions sometimes will, makes other, also untested statements about the broader curriculum and the educational process. No evidence, however, is yet before the court. Such factual, context-dependent issues cannot be resolved at this very early stage of the litigation.

Let me put it another way. As a lawsuit, this matter may present controversial issues. As a motion to dismiss, it does not. There will be opportunity enough to consider the substantive issues when evidence has been developed in discovery and the facts have been developed. For now, I will deny the motion to dismiss with minimal discussion.

## Discussion

### 1. Sufficiency of the allegations

One component of the defendants' motion asserts that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

#### a. The applicable standard of review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly*, see infra).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. Analysis

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I.[2] Both sides cite the familiar three-part test of *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Under that test, a challenged state practice does not violate the Establishment Clause if (1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not create an excessive entanglement of the government with religion.

The Complaint was obviously drafted with the *Lemon* test in mind. It alleges that the course materials have no secular purpose, that they have the principal purpose of advancing religion, and that they entangle the government with the religion of Islam. (*See* Cplt. ¶¶ 109, 110, 111) It alleges further ~~alleges~~ that the course materials endorse and advocate, rather than merely teach about, the Islamic faith. Whether those allegations can be sustained is a question for another day, but they have been made.

Defendants respond that under the *Lemon* regime, there is no blanket prohibition on the presentation of information about religion in the context of a an academic class. *See Stone v. Graham*, 449 U.S. 39, 42 (1980). The court, they say, cannot take a single religious statement from the curriculum and treat it as if it were the school authorities' own statement of belief; it must view the context and the totality of the circumstances to determine whether religion is being endorsed or promoted. *See, e.g.*, Def. Reply Brf. 5–6 (citing *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 40 (2004) (O'Connor, J., concurring in judgment); *ACLU v. Black Horse Pike Reg'l School Bd.*, 84 F.3d 1471, 1485–86 (3d Cir. 1996).

---

2  The guarantee against establishment of religion has long been incorporated via the Fourteenth Amendment against action by the states. *Everson v. Board of Education*, 330 U.S. 1 (1947)

5

So far, so good; citation of legal authority is fair game on a motion to dismiss. But defendants' motion falls afoul of the basic principle that the Complaint's allegations must be assumed to be true on a motion to dismiss. Defendants attempt here to deny the plaintiff's allegations or supplement them with allegations of their own. The videos on Islam, defendants emphasize, occupied a small part of the school year. They were part of a curriculum that covered many cultures and religions and would have been understood in that context. This material, they say, could not be viewed as an endorsement of a particular religious faith or a call to conversion.

The Complaint, however, alleges otherwise. However valid, or not, the defendants' arguments may turn out to be, they furnish no basis for dismissal of the complaint. The information about the totality of the curriculum, for example, does not appear on the face of the complaint. And the sensitive balancing required by *Lemon* cannot be performed on the basis of mere allegations. Such considerations are simply premature.

The case upon which the defendants primarily rely only underscores that point. *California Parents for Equalization of Educ. Materials v. Noonan*, 600 F. Supp. 2d 1088 (E.D. Cal. 2009), rejected a claim that a school textbook presented Hinduism in a denigrating matter. It held that the information, though religious in nature, was permissibly presented in the context of a course on world history and geography. *Noonan* so held, however, on summary judgment, with the benefit of a full factual record—not on a motion to dismiss.

For the foregoing reasons, the component of the defendants' motion that seeks to dismiss the Complaint for failure to state a claim is denied.

### 2. The six individual defendants in their official capacities

The motion also seeks dismissal of the complaint against the six individual defendants. They are sued solely in their official capacities as school

officials, persons responsible for curriculum, and social studies teachers.[3] The Complaint essentially seeks injunctive or declaratory relief; although the Complaint contains a prayer for nominal damages,[4] the plaintiff disclaims any intent to seek damages from the individual defendants. (ECF no. 9, Pl. Brf. at 6 ("Plaintiff does not seek money damages against the individual defendant in their official capacities. Plaintiff does seek prospective injunctive relief against the individual defendants in their official capacities."))

The naming of individual defendants is perhaps best understood against the background of a § 1983 action against the State. As defendants say, a § 1983 action against a person in his or her official capacity is, in substance, an action against that person's governmental employer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). That concept has bite in the context of a suit for damages against an employee of the State; the result is that a State official defendant partakes of the State's immunity from suit. *See Alabama v. Pugh*, 438 U.S. 781 (1978). But where (as here) injunctive relief is sought, it has long been held that a plaintiff may avoid the Eleventh Amendment/immunity bar by bringing an action against an individual State official. *See Ex parte Young*, 209 U.S. 123 (1908). It is thus common to see § 1983 actions against the State authorities pled as claims against individuals in their official capacities for injunctive relief.

A local government, however, is not immune from suit under § 1983. *See generally Monell v. Dep't of Soc. Servs. Of New York*, 436 U.S. 658 (1978) (imposing liability for actions of employees pursuant to local policy or custom). At the local level, then, there is no particular need to name individual officials as defendants, especially in suits for injunctive relief. *See Kentucky v. Graham*,

---

3     Michael Lasusa is sued as School Superintendent; Karen Chase as Assistant Superintendent in charge of curriculum; Jill Gihorski as principal of the middle school; Steven Maher as supervisor of social studies for the district; and Megan Keown and Christine Jakowski as social studies teachers in the middle school.

4     Traditionally, $1.00 or some similar sum as an acknowledgement of a violation of rights that did not cause injury. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978)

473 U.S. 159, 166–167 & n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief").

That is not to say, however, that the naming of a local official in his or her official capacity is impermissible per se. Defendants cite *Baez v. Lancaster Cty.*, 487 F. App'x 30, 32 (3d Cir. 2012). There, however, the Court upheld a grant of summary judgment with respect to a County jail warden, finding that the claims against him were duplicative of those against his employer, the County, which had already failed on summary judgment. It is possible, of course, that a similar scenario could play out in this case, after discovery and motions for summary judgment. Individual defendants may be redundant. But that is different from saying that individuals *cannot* be named in a complaint in their official capacities because the claim is really against their employer.

Pleading patterns die hard; this § 1983 action may simply be following common practice in actions against the State. Plaintiff's papers convey the sense that she regards the individual officials here as what securities lawyers call "relief defendants," *i.e.*, persons whose presence is required for the fashioning of complete relief should plaintiff prevail. I doubt that; if the curriculum must be changed, an order directed to the local school authorities should be sufficient. In response to any concerns, the court has the power to fashion an injunction that is sufficient to bind teachers and other employees, irrespective of the pleadings.

To simplify the administration of this case, I direct the parties to discuss a reduction in the defendant roster at their upcoming conference before the Magistrate Judge. They may wish to focus in particular on the necessity, and the pedagogical ramifications, of retaining the two defendants who are middle school social studies teachers. For now, I will deny this component of the motion to dismiss without prejudice to renewal if and as appropriate.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint (ECF no. 5) is denied. A separate Order accompanies this Opinion.

Dated: June 13, 2018

KEVIN MCNULTY
United States District Judge